FILED

2013 JUL -1 PM 12: 43

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY _____

1  JEFFREY H. REEVES, SBN 156648
   jreeves@gibsondunn.com
2  LINDA D. LAM, SBN 229780
   llam@gibsondunn.com
3  VIVEK NARAYANADAS, SBN 266762
   vnarayanadas@gibsondunn.com
4  GIBSON, DUNN & CRUTCHER LLP
   3161 Michelson Drive
5  Irvine, CA 92612-4412
   Telephone:  949.451.3800
6  Facsimile:   949.451.4220

7  Attorneys for Plaintiff TOMS SHOES INC.

8              UNITED STATES DISTRICT COURT

9            CENTRAL DISTRICT OF CALIFORNIA

10                WESTERN DIVISION

11  TOMS SHOES INC.,                CASE NO. CV13-04743-SS

12              Plaintiff,          COMPLAINT FOR:

13       v.                         1. BREACH OF CONTRACT

14  DAVID BUTLER; and DOES          2. DECLARATORY RELIEF
    1through10, inclusive,
15                                  DEMAND FOR JURY TRIAL

16              Defendants.

17        Plaintiff TOMS Shoes Inc. (hereinafter referred to as "Plaintiff" or "TOMS"),

18  by its undersigned attorneys, alleges as follows:

19                         **PARTIES**

20  **Plaintiff**

21        1.     TOMS is a corporation organized under the laws of California with its

22  principal place of business in Los Angeles, California.  TOMS is a global designer and

23  distributor in the footwear and eyewear businesses.

24  **Defendants**

25        2.     TOMS alleges on information and belief that Defendant David Butler

26  (hereinafter referred to as "Butler") is a national of the United Kingdom (hereinafter

27  referred to as the "UK").  TOMS further alleges on information and belief that Butler

28  often did business under the trading name The Butler Company.

Gibson, Dunn &
Crutcher LLP

## JURISDICTION

3.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity between the parties and because the amount in controversy exceeds $75,000, exclusive of interest and costs—specifically, TOMS seeks damages in an amount exceeding $2 million.

4.    This Court has personal jurisdiction over Butler because he irrevocably consented to the non-exclusive jurisdiction of the United States District Court for the Central District of California under the express and implied-in-fact contracts between the parties.  Specifically, Section 12 of the 2011 Sales Representative Agreement between the parties, and the Implied-In-Fact contract arising out of that agreement, states as follows:  "[a]ny action, suit, or proceeding arising out of or relating to this Agreement shall be brought . . . , if it has or can acquire jurisdiction, in the United States District Court for the Central District of California in which Los Angeles County, California is located[.]"  Section 12 further states that Butler "irrevocably submits to the exclusive jurisdiction of each such court in any such action . . . and waives any objection it may now or hereafter have to venue or convenience of forum, agrees that all claims in respect of any such action, suit, or proceeding shall be heard and determined only in any such court and agrees not to bring any action, suit, or proceeding arising out of or relating to this Agreement in any other court."

5.    This Court further has personal jurisdiction over Butler because of his contacts with and purposeful availing of the benefits of the forum, California.  In particular, Butler voluntarily visited TOMS' Los Angeles, California offices on multiple occasions, including in or around 2007 and 2008, for purposes of conducting business under the express and implied-in-fact contracts at issue in this litigation, and consciously chose to work with TOMS knowing it was a California corporation with employees located primarily at its headquarters in Los Angeles, California.

6.    Venue is proper in this District under 28 U.S.C. § 1391(b)(3), (c)(3), and (d), because Butler on information and belief is an alien defendant, and can be sued in

1  any District.  Furthermore, under the relevant contracts, Butler irrevocably submitted

2  and consented to litigation in this venue.

3  **GENERAL ALLEGATIONS**

4      7.    TOMS is a global provider of footwear and eyewear.  TOMS is known as

5  a socially conscious company that donates one pair of shoes or eyeglasses to a

6  developing country for every pair of shoes or eyewear that it sells.

7      8.    TOMS began its business in 2006, designing and distributing footwear

8  exclusively in the United States.

9  **The Shoe Industry in the UK**

10      9.    In the Spring of 2008, TOMS began to sell shoes in the UK.  The shoe

11  industry in the UK is broken largely into two seasons:  Spring/Summer, which retailers

12  sell to individual customers from approximately January to June, and Fall/Winter,

13  which retailers sell to individual customers from July to December.  TOMS takes

14  orders for the Spring/Summer season between July and December of the prior year,

15  and for the Fall/Winter season between January and June of the same year.

16      10.    TOMS sells two lines of shoes in the UK: its "classic" line, and its

17  "seasonal" line.  TOMS' seasonal line changes each season, while its classic line

18  remains largely the same.

19      11.    TOMS uses two measurements to gauge its sales performance.  "Sell-in"

20  measures the pairs of shoes that were sold *to* a retailer, for example a department store.

21  "Sell-through" measures the pairs of shoes that were sold *by* retailers to individual

22  customers.

23  **TOMS' Early Relationship With Butler and TBC**

24      12.    TOMS alleges that in or around late 2007, it engaged in a dialogue with

25  Butler at a trade show in Las Vegas, Nevada, about the possibility of expanding sales

26  into the UK.

27      13.    TOMS alleges on information and belief that in either 2007 or 2008, it

28  retained Butler to act as its sales representative in the UK.  The retention agreement

Gibson, Dunn &
Crutcher LLP

3

1  between these parties was oral.  Under the oral agreement, TOMS agreed to pay Butler
2  a 10% commission on UK sales, in exchange for Butler (1) identifying new UK clients
3  that were a good match for TOMS' brand identity; (2) providing customer service to
4  TOMS' UK clients; (3) providing TOMS with information about the UK market; and
5  (4) assisting clients in managing their purchases to avoid excess inventory.
6      14.    Between 2009 and 2013 TOMS oversaw Butler's work as a sales
7  representative, attempting to conduct weekly calls to discuss Butler's work.
8      15.    TOMS alleges that under the oral agreement with Butler, Butler was
9  supposed to help customers make seasonal purchases that fit their needs, such that
10  TOMS' "sell-in" figures were equivalent, or as close as possible, to its "sell-through"
11  figures.  Butler was expected and required to prevent customers from over-ordering,
12  which would have left customers either with excess seasonal shoes they could no
13  longer use at the close of a particular season at all, or excess classic shoes that retail
14  customers could not sell-through to individual customers, resulting in a decreased
15  order of classic shoes during the next cycle.
16      16.    TOMS alleges on information and belief that sometime after 2008, Butler
17  employed multiple subrepresentatives to assist Butler with the tasks required under his
18  agreement with TOMS.
19  **The Sales Representative Agreement and Implied-In-Fact Contract Between**
20  **TOMS and Butler**
21      17.    On January 1, 2011, TOMS entered into the written Sales Representative
22  Agreement (the "Agreement") with Butler.  Under the Agreement, Butler was
23  appointed as TOMS' sales representative in the UK.
24      18.    Pursuant to Section 3 of the Agreement, Butler was to "devote [his] good
25  faith best efforts . . . toward (a) marketing of the Products in the [UK], (b) servicing
26  customers of the Products within the [UK], and (c) such further duties and
27  responsibilities related to the foregoing as [TOMS] may reasonably assign[.]"
28

Gibson, Dunn &
Crutcher LLP

4

19.    In exchange for Butler's good faith best efforts, and pursuant to Section 6(a) and Exhibit C of the Agreement, TOMS agreed to pay Butler a 5% commission "on all sales of Products within the [UK] solicited by [Butler], accepted by [TOMS], and delivered or provided to the customer during the term of this Agreement, and for which payment is received in full[.]"

20.    Section 7 of the Agreement states that Butler "is not an agent or employee of [TOMS] for any purpose whatsoever, but is an independent contractor of" TOMS. Moreover, the Agreement does not provide that Butler would be TOMS' *exclusive* sales representative in the UK.

21.    Butler's 5% commission was only to be paid on money actually collected by TOMS. If TOMS was required to refund a sale to a UK client, or to accept a return or cancellation from a UK client, after the ordered goods were delivered, TOMS debited the value of the commission associated with any such refund, return, or cancellation from Butler's next commission payment.

22.    Pursuant to Section 8 of the Agreement, Butler was required to "indemnify and hold [TOMS] harmless from and against any and all damages, losses, costs, fines, penalties, and expenses (including reasonable attorneys' fees) incurred by [TOMS] as a result of or in connection with the performance, or non-performance by" Butler.

23.    Pursuant to Section 11(a), the Agreement was to continue until January 1, 2012, unless prior to that date the parties mutually agreed to terminate the Agreement in writing, or TOMS elected to terminate the Agreement "immediately upon providing notice to [Butler] at any time after [Butler]'s breach of this Agreement or [Butler]'s engaging in any conduct or having any event occur that has a tendency to injury [TOMS'] business."

24.    Also, pursuant to Section 11(b), TOMS was permitted to terminate the contract if Butler "breaches or fails to carry out any or all of its responsibilities or obligations under this Agreement, and fails to remedy such failure or breach within ten

Gibson, Dunn &
Crutcher LLP

1  (10) days after receiving written notification thereof" from TOMS, or if Butler
2  commits "any willful act or omission . . . constituting dishonesty, fraud, or other
3  malfeasance[.]"

4      25.    Section 11(c) of the Agreement provides that if the Agreement was
5  terminated, Butler would "not be entitled to any compensatory payment upon the
6  termination . . . of this Agreement for whatever reason."

7      26.    Section 12 of the Agreement provides that the terms of the Agreement are
8  to be "enforced and construed in accordance with the laws of the State of California
9  without regard to conflict of law principles that would require the application of any
10 other law."

11     27.    Although the term of the Agreement expired on January 1, 2012, the
12 parties continued to perform under its terms as though the Agreement remained fully in
13 force. Butler continued to interface with TOMS' UK clients (providing them with
14 customer service and support), to participate in regular calls with TOMS' California
15 office, and to be paid his commissions based on money that TOMS actually received
16 for ordered goods. By continuing to operate as if the Agreement were still in place, the
17 parties manifested their intent to be bound by, and assented to, an implied-in-fact
18 contract (the "Implied-In-Fact contract") containing the same terms as the Agreement.

19 **Butler Breaches the Agreement and Implied-In-Fact Contract**

20     28.    TOMS takes care to foster, protect and promote its brand identity.
21 Beginning in or before 2011, Butler—and through Butler, TBC—began to haphazardly
22 identify potential future clients for TOMS. In most cases, TOMS did not believe these
23 prospects fit well with TOMS' brand identity and concluded that allowing these
24 potential clients to sell its products would damage TOMS' brand.

25     29.    Besides identifying inappropriate customer prospects for TOMS, Butler—
26 and through Butler, TBC—also failed to devote his good faith best efforts to providing
27 TOMS' UK clients with timely and high-quality customer service in breach of
28 Section 3 of the Agreement.

Gibson, Dunn &
Crutcher LLP

6

30.     For example, in December 2011, OFFICE Limited ("Office")—TOMS' largest UK customer in 2011 and 2012, accounting for approximately 38% of Butler's 2012 commissions from TOMS—informed TOMS that Butler had failed to show Office's purchasing agent samples from TOMS' summer collection, part of TOMS' Spring/Summer 2012 line, until the day that purchase orders for that collection were due.  TOMS alleges on information and belief that the standard industry practice was to show purchasing agents samples for an upcoming collection *six to eight weeks* prior to the purchasing deadline.  Further, Butler had samples for this collection in his possession for approximately two months prior to the order deadline, but inexplicably and in contravention of any reasonable or standard industry practice failed to show the samples to this client in advance of the purchase deadline.  Office subsequently emailed TOMS to complain about the fact that its purchasing agents were not able to see samples of the new seasonal collection with sufficient lead time to make sound purchasing decisions.

31.     Additionally, in or before 2011, Office began to complain about the customer service provided by Butler and TBC.  Among other things, Office complained that Butler was not responding to its customer service inquiries in a timely fashion.  In particular, one of Office's senior managers complained regularly of Butler's inattentiveness and work ethic, and asked TOMS on multiple occasions why it continued to use Butler as a representative.

32.     Butler—and through Butler, TBC—also failed to help TOMS' UK clients manage their purchasing levels to avoid accumulating excess inventory.  In particular, Butler mismanaged the Office account and failed to provide Office with requisite guidance as to appropriate purchasing levels.  Due to Butler's conduct, Office had excess inventory that it was unable to sell-through to retail consumers for the Fall/Winter 2012 season, which resulted in Office substantially decreasing its purchases from TOMS for the Spring/Summer and Fall/Winter 2013 seasons.

33.    On July 12, 2012, in response to Office's complaints about Butler, TOMS assumed direct control over the Office account, without objection from Butler.

34.    Butler and TBC similarly mishandled other important TOMS clients. For example, Butler did not properly manage FootAsylum Limited's ("FootAsylum") purchasing levels. As a result, FootAsylum severely overestimated its inventory needs for the Spring/Summer 2013 season, and eventually revised its initial estimate downwards by over100,000 pairs of shoes, from approximately 200,000 to less than 100,000 pairs. Due to this overestimate, TOMS was compelled to provide a volume discount on its order. After FootAsylum revised its order downwards, it received the same discount even though its revised purchase would not have entitled FootAsylum to the same volume discount, causing TOMS a significant loss in revenue.

35.    Additionally, due to Butler's mishandling of the FootAsylum account, FootAsylum cancelled or returned orders for several thousand pairs of shoes. In particular, TOMS was left with approximately 15,000 pairs of seasonal shoes that TOMS could not resell.In addition, Butler was regularly late to meetings and was slow to respond to customer requests. For example, at a January 2013 sales summit in Berlin, Germany, Butler on information and belief arrived so late that he was unable to participate meaningfully in the summit.

36.    On September 28, 2012, TOMS discussed with Butler the possibility that TOMS might have to take over responsibility for the account of another major client, Schuh Limited ("Schuh")—TOMS' second-largest UK customer in 2011 and 2012, accounting for approximately 30% of Butler's 2012 commissions from TOMS. Butler objected in an email dated October 3, 2012, and called for a meeting with his counsel. Butler eventually withdrew this request for a meeting, and TOMS permitted Butler to continue handling the Schuh account through February 2013.

**TOMS' Damages Due to Butler's Breach**

37.    Throughout late 2012 and early 2013, TOMS' UK clients continued to decrease their order volumes because they had excess inventory due to Butler's and

Gibson, Dunn &
Crutcher LLP

1   TBC's failures.  TOMS alleges on information and belief that during this period,

2   TOMS' UK clients continued to complain about Butler's customer service.

3   Consequently, TOMS was required to exert increasing amounts of control and

4   oversight over its UK operations from TOMS' offices in the Netherlands and Los

5   Angeles.

6        38.    Due to TOMS' loss of confidence in Butler's ability to properly service

7   and interface with customers, by November 2012, employees from TOMS' Los

8   Angeles office were directly interfacing with UK clients for purposes of negotiating,

9   order-taking, and servicing customers.  Even at meetings with clients, a TOMS

10  employee would almost always be in the room along with Butler.  In order to provide

11  its UK clients with customer support from its Netherlands and Los Angeles offices,

12  TOMS was required to incur additional travel costs.

13       39.    As a result of Butler's mishandling of TOMS' UK customers' inventory,

14  several customers, including FootAsylum, returned previously-ordered goods.  In order

15  to process these returned goods, TOMS was required to incur additional freight and re-

16  stocking costs.  Moreover, TOMS was unable to resell many of these returned goods,

17  in particular returns from its seasonal line, and thus was unable to recover any revenue

18  to account for the costs of production and sales of these returned goods.

19       40.    Additionally, due to Butler's poor customer service, TOMS was required

20  to hire additional sales staff to oversee its UK business.

21       41.    In order to assist certain of its key UK clients sell-through the excess

22  inventory they had gathered due to Butler's mishandling of their accounts, TOMS was

23  required to pay for an additional, aggressive marketing plan to raise sell-through levels

24  for these clients.

25  **TOMS' Termination of the Implied-In-Fact Contract**

26       42.    On March 20, 2013, TOMS orally informed Butler that TOMS was

27  terminating its relationship with Butler, effective immediately.  TOMS set a "run-off"

28  transition period of around 60 days.

43.   On April 8, 2013, TOMS sent Butler an email confirming that Butler was in breach of the Implied-In-Fact contract between the parties, and that Butler's breach negatively impacted TOMS' business.  This written notice again confirmed TOMS had terminated the Implied-In-Fact contract with Butler immediately, with a "run-off" to June 20, 2013.  Alternatively, TOMS gave written notice that it terminated the Implied-In-Fact contract because of

44.   In any event, Butler failed to take any objective steps to cure his breaches asserted in TOMS' April 8, 2013 email.

## FIRST CAUSE OF ACTION

Breach of Contract—Sales Representative Agreement

(Against All Defendants)

45.   Plaintiff repeats and incorporates by reference the allegations in paragraphs 1 through 44 above as if fully set forth herein.

46.   TOMS and Butler entered into a written Sales Representative Agreement (the "Agreement"), dated January 1, 2011, under which Butler agreed and was obligated to provide marketing and customer service to TOMS' UK clients and potential clients.  In exchange, TOMS agreed to pay Butler a 5% commission based on the money that TOMS actually received due to sales made by Butler to TOMS' UK clients.

47.   The Agreement was a legally valid and enforceable contract.

48.   Butler employed subrepresentatives in order to satisfy his duties to TOMS under the Agreement.

49.   TOMS alleges that Butler breached his agreement to, and failed to carry out his duty to, among other things, "devote [his] good faith best efforts . . . toward (a) marketing of the Products in the [UK], (b) servicing customers of the Products within the [UK], and (c) such further duties and responsibilities related to the foregoing as [TOMS] may reasonably assign[,]" as required by Section 3 of the Agreement.

Gibson, Dunn & Crutcher LLP

50.   TOMS further alleges that Butler breached the Agreement by, among other things, failing to provide TOMS' UK clients with timely, high-quality customer service, by failing to identify and solicit potential new clients that fit with TOMS' brand identity, and by failing to assist TOMS' UK clients manage their purchase levels.

51.   As a direct and proximate result of Defendants' breach, TOMS has been damaged in an amount according to proof at trial, plus interest in an amount exceeding $2 million, exclusive of interest and costs.  TOMS' damages include, but are not limited to, damages resulting from harm to TOMS' brand image in the UK.

52.   Pursuant to Section 8 of the Agreement, Butler was required to "indemnify and hold [TOMS] harmless from and against any and all damages, losses, costs, fines, penalties, and expenses (including reasonable attorneys' fees) incurred by [TOMS] as a result of or in connection with the performance, or non-performance by" Butler.

53.   TOMS alleges that TOMS has performed its obligations to Butler under the Agreement.

### SECOND CAUSE OF ACTION

Breach of Contract—Implied-In-Fact Contract

(Against All Defendants)

54.   Plaintiff repeats and incorporates by reference the allegations in paragraphs 1 through 53 above as if fully set forth herein.

55.   The term of the Agreement expired on January 1, 2012.

56.   Although the term of the Agreement expired on January 1, 2012, the parties continued to perform as though the Agreement remained fully in force.  Butler continued to interface with TOMS' UK clients (providing them with customer service and support), to participate in weekly calls with TOMS' California office, and to be paid commissions based on money that TOMS actually received for ordered goods.  By continuing to operate as if the Agreement were still in place, the parties manifested

Gibson, Dunn &
Crutcher LLP

11

1  their intent to be bound by, and assented to, the Implied-In-Fact contract, which

2  contained the same terms as the Agreement

3      57.    Butler employed subrepresentatives in order to satisfy his duties to TOMS

4  under the Implied-In-Fact contract.

5      58.    Butler breached his agreement to, and failed to carry out his duty to,

6  among other things, "devote [his] good faith best efforts . . . toward (a) marketing of

7  the Products in the [UK], (b) servicing customers of the Products within the [UK], and

8  (c) such further duties and responsibilities related to the foregoing as [TOMS] may

9  reasonably assign[,]" as required under the Implied-In-Fact contract.

10     59.    Further, Butler breached the Implied-In-Fact contract by, among other

11  things, failing to provide TOMS' UK clients with timely, high-quality customer

12  service, by failing to identify and solicit potential new clients that fit with TOMS'

13  brand identity, and by failing to assist TOMS' UK clients manage their purchase

14  levels.

15     60.    TOMS justifiably and lawfully terminated the Implied-In-Fact contract,

16  effective immediately on March 22, 2013 or alternatively on, and in any event with

17  effect June 20, 2013 and "immediately upon providing notice to [Butler] at any time

18  after [Butler]'s breach of this Agreement or [Butler]'s engaging in any conduct or

19  having any event occur that has a tendency to injury [TOMS'] business" as required by

20  section 11 of the Agreement, which was incorporated in the Implied-In-Fact contract.

21     61.    TOMS alternatively justifiably and lawfully terminated the Implied-In-

22  Fact contract on notice by the said April 8, 2013 email, effective June 20, 2013,

23  because of Butler's breach which would nevertheless justify immediate termination of

24  the agency contract, after notifying Butler that he was in breach on April 8, 2013, and

25  after Butler failed "to remedy such failure or breach within ten (10) days after

26  receiving written notification thereof" from TOMS, as required by section 11 of the

27  Agreement, which was incorporated in the Implied-In-Fact contract.

28

Gibson, Dunn &
Crutcher LLP

62.     TOMS also justifiably and lawfully terminated the Implied-In-Fact contract, immediately on March 22, 2013, or alternatively, and in any event effective on June 20, 2013, on the ground that by failing to adequately manage purchasing levels for TOMS' clients, and by failing to adequately market and service TOMS' clients, Butler committed "willful act[s] or omission[s] . . . constituting . . . malfeasance[.]" in breach of section 11 of the Agreement, which was incorporated in the Implied-In-Fact contract.

63.     As a direct and proximate result of Butler's breaches, TOMS has been damaged in an amount according to proof at trial, plus interest in an amount exceeding $2 million, exclusive of interest and costs.  TOMS' damages include, but are not limited to: (1) damages resulting from harm to TOMS' brand image in the UK; (2) decreased order volumes due to Butler's failure to assist TOMS' clients with their purchase levels; (3) lost profits due to improper volume discounts for TOMS' UK clients who revised down their purchase orders due to Butler's failures; (4) commissions paid for sales that were cancelled, refunded, or returned after the ordered goods were delivered; (5) costs associated with good that were returned, including, but not limited to additional freight costs, and re-stocking costs; (6) costs associated with the production and sales of goods that were returned and were not able to be resold; (7) costs associated with providing customer service to TOMS' UK clients who were supposed to be serviced by Butler, including, but not limited to the cost of travel to allow TOMS' non-UK employees to meet and communicate with TOMS' UK clients; (8) additional marketing expenses to assist TOMS' UK clients sell-through the excess inventory these clients built up as a result of Butler's mismanagement of their accounts; and (9) costs associated with hiring additional UK sales staff to oversee sales in the UK, due to Butler's poor performance.

64.     Butler is not entitled to any additional commissions for orders taken *after* March 22, 2013, or alternatively June 20, 2013, as these sales are necessarily attributable exclusively to TOMS' own sales efforts.

Gibson, Dunn &
Crutcher LLP

65.     Pursuant to Section 8 of the Agreement, which was incorporated into the Implied-In-Fact contract, Butler was required to "indemnify and hold [TOMS] harmless from and against any and all damages, losses, costs, fines, penalties, and expenses (including reasonable attorneys' fees) incurred by [TOMS] as a result of or in connection with the performance, or non-performance by" Butler.

66.     TOMS has performed its obligations to Butler under the Implied-In-Fact Contract.

## THIRD CAUSE OF ACTION

### Declaratory Relief

### (Against All Defendants)

67.     Plaintiff repeats and incorporates by reference the allegations in paragraphs 1 through 66 above as if fully set forth herein.

68.     An actual controversy exists in which the parties must ascertain their rights and duties under the Implied-In-Fact contract.  Specifically, a controversy exists as to: (1) whether Butler breached the Implied-In-Fact contract; (2) whether TOMS lawfully terminated the Implied-In-Fact contract with Butler under the terms of the contract; and (3) whether TOMS was justified under California law in terminating the Implied-In-Fact contract.

69.     In particular, an actual controversy exists because the UK's Commercial Agents Regulations, which TOMS understands Butler will assert are applicable to this controversy, provide that if Butler is a commercial agent of TOMS under an "agency contract" that TOMS has terminated—all within the meaning of the UK Regulations—then according to Butler he is entitled to be paid certain "compensation" measured based upon the value of the alleged agency.  Commercial Agents [Council Directive] 1993, reg. 17.  However, the Regulations specify that no such compensation is owed if TOMS "has terminated the agency contract because of default attributable to" Butler because of "the failure of [Butler] to carry out all or part of [his] obligation under that contract because of default attributable to the commercial agent which would justify

1  immediate termination of the agency contract." Commercial Agents [Council
2  Directive] 1993, regs. 16 & 18. TOMS alleges that it terminated the Implied-In-Fact
3  contract because Butler failed to carry out their duties under that contract, as set forth
4  in Section 3 of the Agreement. Consequently, TOMS alleges that even if Butler *was*
5  TOMS' commercial agents within the meaning of the UK Regulations, which TOMS
6  disputes, Butler would not be entitled to additional compensation or commission under
7  UK law.

8       70.    There is a further potential argument as to whether Butler might be
9  entitled to commission on transactions concluded after the Implied In-Fact contract
10  was terminated. Commercial Agents [Council Directive] 1993, reg. 8. TOMS alleges
11  that such a commission is not provided for under the Implied In-Fact contract and the
12  relevant California law.

13       71.    A judicial determination is necessary to allow the parties to ascertain their
14  rights and duties under the Implied-In-Fact contract, which is to be construed in
15  accordance with California law pursuant to section 12 of the Agreement, in order to
16  determine the parties' rights and obligations under UK law.

17       72.    TOMS accordingly seeks a judicial declaration that it justifiably, in
18  accordance with California law, terminated the Implied-In-Fact contract because of
19  Butler's failure to carry out all or part of his obligations under that contract which
20  would justify immediate termination of the agency contract.

21       73.    Furthermore, TOMS accordingly also seeks a judicial declaration that in
22  accordance with California law, under the terms of the Implied-In-Fact contract Butler
23  is not entitled to commission on transactions concluded after the Implied-In-Fact
24  contract was terminated.

25                           **PRAYER FOR RELIEF**
26  WHEREFORE, Plaintiff TOMS prays for the following relief:
27       1.    For compensatory and consequential damages in an amount exceeding $2
28  million, which includes, but is not limited to: (1) damages resulting from harm to

Gibson, Dunn &
Crutcher LLP

1  TOMS' brand image in the UK; (2) decreased order volumes due to Butler's failure to
2  assist TOMS' clients with their purchase levels; (3) lost profits due to improper
3  volume discounts for TOMS' UK clients who revised down their purchase orders due
4  to Butler's failures; (4) commissions paid for sales that were cancelled, refunded, or
5  returned after the ordered goods were delivered; (5) costs associated with good that
6  were returned, including, but not limited to additional freight costs, and re-stocking
7  costs; (6) costs associated with the production and sales of goods that were returned
8  and were not able to be resold; (7) costs associated with providing customer service to
9  TOMS' UK clients who were supposed to be serviced by Butler, including, but not
10 limited to the cost of travel to allow TOMS' non-UK employees to meet and
11 communicate with TOMS' UK clients; (8) additional marketing expenses to assist
12 TOMS' UK clients sell-through the excess inventory these clients built up as a result
13 of Butler's mismanagement of their accounts; and (9) costs associated with hiring
14 additional UK sales staff to oversee sales in the UK, due to Butler's poor performance;
15    2.    For declaratory relief in the form of a declaration that Butler breached the
16 Implied-In-Fact contract between itself and TOMS;
17    3.    For declaratory relief in the form of a declaration that TOMS lawfully
18 terminated the Implied-In-Fact contract between Butler and TOMS pursuant to the
19 terms of the contract, because of a default attributable to Butler which would justify
20 immediate termination of the agency contract;
21    4.    For declaratory relief in the form of a declaration that TOMS justifiably,
22 in accordance with California law, terminated the Implied-In-Fact contract because of
23 Butler's failure to carry out all or part of his obligations under that contract;
24    5.    For declaratory relief in the form of a declaration that TOMS justifiably,
25 in accordance with California law, terminated the Implied-In-Fact contract
26 immediately;
27    6.    For declaratory relief in the form of a declaration that, in accordance with
28 California law, under the terms of the Implied In-Fact contract Butler is not entitled to

Gibson, Dunn &
Crutcher LLP

1  commission on transactions concluded after the Implied In-Fact contract was

2  terminated;

3       7.    For the full amount of its attorneys' fees and expenses incurred herein,

4  pursuant to the indemnity provisions in the Agreement and the Implied-In-Fact

5  contract;

6       8.    For costs of suit incurred;

7       9.    For pre-judgment and post-judgment interest as allowed by law; and

8       10.   Such other and further relief as the Court may deem just and proper.

9  Dated: July 1, 2013

10                              JEFFREY H. REEVES
                                LINDA D. LAM
11                              VIVEK NARAYANADAS
                                GIBSON, DUNN & CRUTCHER LLP
12

13                              By: _____
14                                        Jeffrey H. Reeves

15                              Attorneys for Plaintiff TOMS SHOES INC.

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **JURY DEMAND**

2     Plaintiff TOMS Shoes Inc. hereby demands a trial by jury.

3  Dated: July 1, 2013

4                           JEFFREY H. REEVES
                            LINDA D. LAM
5                           VIVEK NARAYANADAS
                            GIBSON, DUNN & CRUTCHER LLP
6

7                           By: _____
8                                        Jeffrey H. Reeves
9                           Attorneys for Plaintiff TOMS SHOES INC.

10  101541043.7

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### NOTICE TO COUNSEL
**(For use in Direct Assignment of Civil Cases to Magistrate Judges Program only)**

*The court has directed that the following rules be specifically called to your attention:*

I.      Notice of Right to Consent to Disposition of a Civil Case by a United States Magistrate Judge [28 U.S.C. § 636(c) and General Order 11-06].

II.     Continuing Obligation to Report Related Cases (Local Rule 83-1.3.3)

III.    Service of Papers and Process (Local Rule 4)


**I.      NOTICE OF RIGHT TO CONSENT TO DISPOSITION OF A CIVIL CASE BY A UNITED STATES MAGISTRATE**

***Pursuant to Local Rule 73-2, the initiating party must serve this notice and consent form CV-11C on each party at the time of service of the summons and complaint or other initial pleading.***

This case has been randomly assigned to Magistrate Judge _Segal_ under the Direct Assignment of Civil Cases to Magistrate Judges Program in accordance with General Order 11-06. The case number on all documents filed with the court must read as follows: **CV13-04743-SS**

The parties are advised that their consent is required if the above assigned magistrate judge is to conduct all further proceedings in the case, including trial and final entry of judgment pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. Should the parties not consent to proceed before the above assigned magistrate judge, the case will be randomly reassigned to a district judge. If this occurs, the parties cannot later consent to reassignment of the case to any other magistrate judge.

**The parties are further advised that they are free to withhold consent without adverse substantive consequences.** **If the parties agree to the exercise of jurisdiction by the magistrate judge, the parties shall jointly or separately file a statement of consent setting forth such election. Except as provided in Local Rule 73-2.4.1.1, for cases originally filed in district court and initially assigned only to a magistrate judge, the statement of consent shall be filed within 42 days after service of the summons and complaint upon that defendant, and within 42 days by plaintiff after service upon the first-served defendant. If the United States, an agency of the United States, or an officer or employee of the United States is a defendant, the statement of consent shall be filed by the government defendant within 60 days after service of the summons and complaint upon that defendant.**

**For cases removed from state court and initially assigned only to a magistrate judge, a joint or separate statements of consent shall be filed by plaintiff and all defendants upon whom service has been effected, within 14 days after the notice of removal is filed.**

Since magistrate judges do not handle felony criminal trials, civil trial dates are not at risk of being preempted by a felony criminal trial, which normally has priority. Further, in some cases, the magistrate judge may be able to assign an earlier trial date than a district judge. There may be other advantages or disadvantages which you will want to consider.

Any appeal from a judgment of the magistrate judge shall be taken to the United States Court of Appeals in the same manner as an appeal from any other judgment of the district court in accordance with 28 U.S.C. §636(c)(3).

If a party has not consented to the exercise of jurisdiction by the magistrate judge within the time required by Local Rule 73-2, the case shall be randomly reassigned to a district judge and a magistrate judge shall be randomly assigned to the case as the discovery judge. (Local Rule 73-2.6)

You may contact the Civil Consent Case Coordinator at (213) 894-1871 or *consentcoordinator@cacd.uscourts.gov* if you have any questions about the Direct Assignment of Civil Cases to Magistrate Judges Program.

## II.  CONTINUING OBLIGATION TO REPORT RELATED CASES

Parties are under the continuing obligation to promptly advise the Court whenever one or more civil actions or proceedings previously commenced and one or more currently filed appear to be related.

Local Rule 83-1.3.3 states: "It shall be the continuing duty of the attorney in any case promptly to bring to the attention of the Court, by filing a Notice of Related Case(s) pursuant to Local Rule 83-1.3, all facts which in the opinion of the attorney or party appear relevant to a determination whether such action and one or more pending actions should, under the criteria and procedures set forth in Local Rule 83-1.3, be heard by the same judge."

Local Rule 83-1.2.1 states: "It is not permissible to dismiss and thereafter refile an action for the purpose of obtaining a different judge."

Local Rule 83-1.2.2 provides: Whenever an action is dismissed by a party or by the Court before judgment and thereafter the same or essentially the same claims, involving the same or essentially the same parties, are alleged in another action, the later-filed action shall be assigned to the judge to whom the first-filed action was assigned. It shall be the duty of every attorney in any such later-filed action to bring those facts to the attention of the Court in the Civil Cover Sheet and by the filing of a Notice of Related Case(s) pursuant to L.R. 83-1.3.

## III.  SERVICE OF PAPERS AND PROCESS

Local Rule 4-2 states: "Except as otherwise provided by order of Court, or when required by the treaties or statutes of the United States, process shall not be presented to a United States Marshal for service." Service of process must be accomplished in accordance with Rule 4 of the Federal Rules of Civil Procedure or in any manner provided by State Law, when applicable. Service upon the United States, an officer or agency thereof, shall be served pursuant to the provisions of FRCP 4(i). Service should be promptly made; unreasonable delay may result in dismissal of the action under Local Rule 41 and Rule 4(m) of the Federal Rules of Civil Procedure. Proof of service or a waiver of service of summons and complaint must be filed with the court.

NAME, ADDRESS & TELEPHONE NUMBER OF ATTORNEY(S) OR PRO PER:

ATTORNEYS FOR:

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| **TOMS SHOES INC.** | | CASE NUMBER |
| | Plaintiff(s), | **CV13- 4743  SS** |
| V. | | **STATEMENT OF CONSENT TO PROCEED BEFORE A UNITED STASTES MAGISTRATE JUDGE** (For use in Magistrate Judge Civil Consent Pilot Project Cases only) |
| **DAVID BUTLER, ET AL** | Defendant(s) | |

### *THIS FORM SHALL BE USED ONLY FOR CASES IN WHICH A MAGISTRATE JUDGE IS INITIALLY ASSIGNED PURSUANT TO LOCAL RULE 73-2*

In accordance with General Order 11-06 and Local Rule 73-2 the above-captioned civil matter has been randomly assigned to Magistrate Judge _____. All parties to the above-captioned civil matter are to select one of the following two options and file this document with the Clerk's Office.

☐ In accordance with the provisions of 28 U.S.C. § 636(C) and F.R.Civ.P.73(b), the party or parties listed below to the above-captioned civil matter hereby waive their right to proceed before a District Judge and Consent to have the assigned Magistrate Judge Suzanne H. Segal conduct all further proceedings in the case, including trial and entry of final judgment.

Any appeal from a judgment of the assigned Magistrate Judge shall be taken to the United States Court of Appeals in the same manner as an appeal from any other judgment of the District Court in accordance with 28 U.S.C. § 636(c)(3).

☐ The party or parties listed below to the above-captioned civil matter Do Not Consent to proceed before the assigned Magistrate Judge Suzanne H. Segal.

The party or parties listed below acknowledge that they are free to withhold consent without adverse substantive consequences.

| Name of Counsel (OR Party if Pro Per) | Signature and date | Counsel for (Name of Party or Parties) |
|---|---|---|
| | | |
| | | |
| | | |
| | | |

☐ Party filing this form shall check this box if all parties have consented to proceed before the assigned Magistrate Judge

## NOTICE TO COUNSEL FROM CLERK

All parties having consented to proceed before the assigned magistrate judge, this case will remain assigned to United States Magistrate Judge Suzanne H. Segal for all further proceedings.

**STATEMENT OF CONSENT TO PROCEED BEFORE A UNITED STASTES MAGISTRATE JUDGE**
(For use in Magistrate Judge Civil Consent Pilot Project Cases only)



# SUZANNE H. SEGAL

**Suzanne H. Segal** was appointed as a Magistrate Judge in 2002. Prior to her appointment, Judge Segal served as an Assistant United States Attorney, Civil Division, and Chief of Civil Appeals in the U.S. Attorney's Office. Earlier, she practiced civil litigation in Los Angeles with Adams, Duque and Hazeltine and Dewey Ballantine. Judge Segal has served as a member of the Executive Committee, Los Angeles County Bar Association Litigation Section, and as Coordinator of the Central District of California's Pro Bono Panel.

Judge Segal received her undergraduate degree from Claremont McKenna College and her law degree from Cornell Law School.

Name & Address:
David Butler
1-3 French Place
London E1 6JB
United Kingdom

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TOMS SHOES INC., | CASE NUMBER |
| PLAINTIFF(S) | CV13-04743—SS |
| v. | |
| DAVID BUTLER; and DOES 1 through 10, inclusive, | **SUMMONS** |
| DEFENDANT(S). | |

TO:   DEFENDANT(S):

A lawsuit has been filed against you.

Within ___21___ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.   The answer or motion must be served on the plaintiff's attorney, __Jeffrey H. Reeves_____, whose address is _Gibson, Dunn & Crutcher LLP, 3161 Michelson Dr., Irvine, CA 92612_____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: _7/1/2013_____

By: _MAR___ F. _____
Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

Name & Address:
David Butler
1-3 French Place
London E1 6JB
United Kingdom

COPY

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

TOMS SHOES INC.,

CASE NUMBER

PLAINTIFF(S)

v.

CV13-04743-SS

DAVID BUTLER; and DOES 1 through 10, inclusive,

SUMMONS

DEFENDANT(S).

TO:    DEFENDANT(S):

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, __Jeffrey H. Reeves_____, whose address is Gibson, Dunn & Crutcher LLP, 3161 Michelson Dr., Irvine, CA 92612_____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: 7/1/2013

By: _____
Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

CV-01A (10/11)

SUMMONS

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**I. (a) PLAINTIFFS** ( Check box if you are representing yourself ☐ )

TOMS Shoes Inc.

**DEFENDANTS** ( Check box if you are representing yourself ☐ )

David Butler

**(b) Attorneys** (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)
Jeffrey H. Reeves
Gibson, Dunn & Crutcher LLP
3161 Michelson Dr., Irvine, CA 92612
Telephone: (949) 451-3800 (additional attorneys on attached sheet)

**(b) Attorneys** (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)
David Bentley
BentleyandCo
7 Littlemoor Road, Pudsey, Leeds, LS28 8AF, United Kingdom
Telephone: 0113 236 0550

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff
☐ 2. U.S. Government Defendant
☐ 3. Federal Question (U.S. Government Not a Party)
☒ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☒ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1. Original Proceeding
☐ 2. Removed from State Court
☐ 3. Remanded from Appellate Court
☐ 4. Reinstated or Reopened
☐ 5. Transferred from Another District (Specify)
☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No   (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☒ No   ☒ **MONEY DEMANDED IN COMPLAINT: $** >2,000 (in thousands)

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
28 U.S.C. 1332

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | **TORTS** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | **PERSONAL PROPERTY** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☐ 370 Other Fraud | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influ-enced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Com-modities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | **BANKRUPTCY** | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | ☒ 190 Other Contract | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 195 Contract Product Liability | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 196 Franchise | ☐ 360 Other Personal Injury | ☐ 440 Other Civil Rights | **LABOR** | |
| ☐ 896 Arbitration | **REAL PROPERTY** | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 210 Land Condemnation | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| | ☐ 220 Foreclosure | ☐ 367 Health Care/Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/Accomodations | ☐ 740 Railway Labor Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act | |
| | | | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation | |
| | | | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act | |

**FOR OFFICE USE ONLY: Case Number:** CV13-04743

AFTER COMPLETING PAGE 1 OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED ON PAGE 2.

CV-71 (02/13)                CIVIL COVER SHEET                Page 1 of 2

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?   ☒ NO   ☐ YES

If yes, list case number(s):

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?   ☒ NO   ☐ YES

If yes, list case number(s):

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.

☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.

☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | United Kingdom |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
**NOTE: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | |

*Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved.

**X. SIGNATURE OF ATTORNEY (OR SELF-REPRESENTED LITIGANT):** _(signature)_   DATE: July 1, 2013

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |

**<u>Additional Attorneys for Plaintiff TOMS Shoes Inc.</u>**

1) Linda D. Lam
Gibson, Dunn & Crutcher LLP
3161 Michelson Dr., Irvine, CA 92612
Telephone: (949) 451-3800

2) Vivek Narayanadas
Gibson, Dunn & Crutcher LLP
3161 Michelson Dr., Irvine, CA 92612
Telephone: (949) 451-3800